IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RAMIRO MARTINEZ TRISTAN,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 6:16-cv-01137-AA<br>6:13-cr-00542-AA<br>**OPINION AND ORDER** |

AIKEN, District Judge:

Petitioner Ramiro Martinez Tristan filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 (doc. 29). I heard oral argument on April 11, 2018, and then stayed consideration of the motion pending the parties' submission of supplemental briefs. For the reasons set forth below, petitioner's motion is granted and the judgment in this case is vacated pending resentencing.

## BACKGROUND

In 2014, petitioner pleaded guilty to possessing a firearm, in violation of 18 U.S.C. § 922(g). The parties jointly recommended a sentence of fifteen years' imprisonment, the mandatory minimum sentence for armed career criminals who possess firearms. They agreed

1—OPINION AND ORDER

that the mandatory minimum applied because, under then-existing law, petitioner had at least three prior convictions for predicate offenses under the Armed Career Criminal Act ("ACCA"). I accepted the joint recommendation and sentenced petitioner to fifteen years' imprisonment, to be followed by five years' supervised release.

The prior conviction relevant to petitioner's § 2255 motion is for three counts of Assault in the Second Degree ("Assault II") in Malheur County, Oregon. Petitioner pleaded guilty to those charges in 1994.

## STANDARDS

Under 28 U.S.C. § 2255, prisoner in federal custody may ask the court to vacate, set aside, or correct his sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a). To warrant relief, a § 2255 petitioner must demonstrate that the error of constitutional magnitude had a substantial and injurious effect on the sentence. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255(b)) (alteration and emphasis in *Blaylock*). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could

be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original, internal quotation marks and citation omitted).

## DISCUSSION

Federal law generally prohibits felons from possessing firearms. 18 U.S.C. § 922(g)(1). Under ordinary circumstance, ten years is the *maximum* term of imprisonment for a violation of § 922(g). *Id.* § 924(a)(2). If a defendant with three previous convictions for a "violent felony or serious drug offense" violates § 922(g), however, the ACCA mandates a *minimum* sentence of fifteen years in prison. *Id.* § 924(e)(1).

The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosive, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]" 18 U.S.C. § 924(e)(2)(B) (emphasis added). That final, italicized clause is known as the "residual clause." *United States v. Jones*, 877 F.3d 884, 886 (9th Cir. 2017). At the time of petitioner's conviction and sentence, Assault II in Oregon qualified as a violent felony under the residual clause. *United States v. Crews*, 621 F.3d 849, 855 (9th Cir. 2010). But *Crews* was overruled in June 2015, when the Supreme Court struck down the residual clause as unconstitutionally vague.[1] *See Johnson v. United States*, 135 S. Ct. 2551, 2257 (2015). Petitioner contends that, after *Johnson*, his convictions for Assault II in Oregon no longer qualify

---

[1] Petitioner's § 2255 motion is timely because he filed it on June 20, 2016, within one year of the Supreme Court's decision in *Johnson*. *See* 28 U.S.C. § 2255(f)(3) (providing that the one-year limitations period runs from "the latest of" four dates, including "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."); *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016) (holding that *Johnson* is retroactively applicable on collateral review).

3—OPINION AND ORDER

as violent felonies and he is therefore no longer subject to the ACCA's fifteen-year mandatory minimum.

Under the post-*Johnson* ACCA, a prior conviction may qualify as a violent felony in one of two ways. The conviction may fall within the statute's "enumerated offenses clause," which provides that a prior conviction is a violent felony if it "is burglary, arson, or extortion, [or] involves use of explosives[.]" 18 U.S.C. § 924(e)(2)(B). Alternatively, the conviction may meet the requirements of the statute's "elements clause," which makes a conviction a violent felony if it "has as an element of use, attempted use, or threatened use of physical force against the person of another." *Id.* Because assault is not an enumerated offense, the question before me is whether Assault II is a violent felony under the elements clause. Neither this Court nor the Ninth Circuit has answered that question.

Courts use the "categorical approach" to determine whether a prior conviction qualifies as a "violent felony" under the ACCA's elements clause. *United States v. Parnell*, 818 F.3d 974, 978 (9th Cir. 2016). Under that approach, courts examine the elements of the state offense to determine whether the state statute is a categorical match to the definition of "violent felony" under the ACCA. The inquiry rests "exclusively" on an examination of the elements of the crime; the "facts underlying the case" have no bearing on the outcome. *Ramirez v. Lynch*, 810 F.3d 1127, 1131 (9th Cir. 2016). The court must presume that "the conviction rested upon nothing more than the least of the acts criminalized." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (alterations normalized). "If the language of the state statute only reaches conduct" that falls within the federal definition, "a conviction under that law is categorically" a violent felony and the inquiry ends. *United States v. Werle*, 877 F.3d 879, 881 (9th Cir. 2017).

If, by contrast, "the language of the state statute sweeps more broadly" than the federal definition, "a conviction under that statute may only qualify as a crime of violence if the statute is 'divisible[.]'" *Id.* A statute is divisible if it "lists several alternative elements, really several different crimes, as opposed to various means of committing a single crime." *Id.* If the statute is divisible, the court may rely on the "modified categorical approach" for the limited purpose of determining which functionally separate crime the defendant was convicted of committing. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). The "modified categorical approach" permits the court to review a "limited class of extra-statutory documents such as indictments and jury instructions" in order to answer that question. *Werle*, 877 F.3d at 881 (alterations normalized).

After the subsection of conviction has been ascertained, the next step is to compare the elements of that subsection to the federal definition. *Id.* At this stage, as with the initial categorical analysis of the entire statute, courts remain constrained to examine only the elements of the statute of conviction. The "means by which the defendant, in real life, committed his crimes" has "no relevance to whether the offense is an ACCA predicate." *Mathis*, 136 S. Ct. at 2251.[2]

---

[2] I count myself among the many federal judges who find this exercise maddeningly abstract and untethered to the real world. *See, e.g.*, *Mathis*, 136 S. Ct. at 2258 (2016) (Kennedy, J., concurring) (decrying "the arbitrary and inequitable results" of the modern categorical approach and arguing that such an approach creates "vast sentencing disparities for defendants convicted of identical criminal conduct in different jurisdictions"); *Moreno v. Att'y Gen. of U.S.*, 887 F.3d 160, 163 n.3 (3d Cir. 2018) ("The categorical approach's disregard of the actual facts of a conviction fosters inconsonant results, and we would be remiss if we did not note our dismay at having to employ the categorical approach in this case."); *United States v. Brown*, 879 F.3d 1043, 1051 (9th Cir. 2018) (Owens, J., concurring) ("All good things must come to end. But apparently bad legal doctrine can last forever, despite countless judges and justices urging an end to the so-called *Taylor* categorical approach."); *United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring) (observing that "the categorical approach can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to

I. *Oregon's Assault II Statute is Overbroad but Divisible*

Oregon's Assault II statute provides that:

(1) A person commits the crime of assault in the second degree if the person:

    (a) Intentionally or knowingly causes serious physical injury to another;

    (b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

    (c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life.

Or. Rev. Stat. § 163.175(1).

I first must determine whether § 163.175(1), as a whole, is a categorical match to the ACCA's definition of violent felony. The Ninth Circuit has held that a state statute must require intentional or knowing use of force in order to qualify as a violent felony under the ACCA elements clause. *See, e.g., United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) ("[T]he use of force must be intentional, not just reckless or negligent."); *Parnell*, 818 F.3d at 981 n.5

---

constitute crimes of violence"); *cf. United States v. Valdiva-Flores*, 876 F.3d 1201, 1211 (9th Cir. 2017) (O'Scannlain, J., concurring) (specially concurring in his own majority opinion to "highlight . . . the bizarre and arbitrary effects of the ever-spreading categorical approach" and noting that the problems are especially "pernicious" in the immigration context). *But see Descamps v. United States*, 570 U.S. 254, 267 (2013) (arguing that the "elements-centric, formal categorical approach" is necessary to avoid "the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries" (internal quotation marks omitted)). *See generally* Sheldon A. Evans, *Punishing Criminals for Their Conduct: A Return to Reason for the Armed Career Criminal Act*, 70 Okla. L. Rev. 623, 645 (2018) (arguing that the "contrived categorical approach" yields "bizarre results" because "the doctrine is not based in reality, but rather relies on the legal fiction that crimes are actually comprised of a set of elements, as opposed to the underlying criminal conduct"). Nevertheless, I am bound to follow the Supreme Court's clear instruction to constrain my review to the elements of the statute of conviction, without regard to additional evidence in the record concerning defendant's actual conduct. *See Mathis*, 136 S. Ct. at 2258 (Kennedy, J., concurring) (advocating amendments to the ACCA to address "a system that each year proves more unworkable" but conceding that Court had correctly applied the categorical approach under its own precedents).

("We have held, however, that the ACCA's force clause reaches only offenses requiring the intentional use of force.") (citing *Dixon*, 805 F.3d at 1197 and *United States v. Lawrence*, 627 F.3d 1281, 1284 (9th Cir. 2010)). Because subsection (1)(c) criminalizes merely *reckless* causation of physical injury by means of a deadly weapon, Oregon's Assault II statute is overbroad.

The next question is whether the statute is divisible. That inquiry turns on whether "a disjunctively worded phrase supplies alternative elements, which are essential to a jury's finding of guilt, or alterative means, which are not." *Dixon*, 805 F.3d at 1198 (internal quotation marks omitted). When a statute is divisible, it requires the prosecutor to "select the relevant element" from a "list of alternatives. And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." *Id.* Here, I conclude that the statute is divisible based on (1) the structure of the statute, which clearly sets out three functionally separate crimes;[3] and (2) Oregon's model jury instructions, which provide a separate instruction for each subsection of § 163.175(1). *See* Oregon State Bar, *Oregon Uniform Criminal Jury Instructions*, Instructions 1402–04 (1993). In this case, it is not necessary to apply the modified categorical approach to determine which subsection of § 163.175(1) petitioner was convicted of violating; the parties agree that he was convicted under § 163.175(1)(a).

II.     *Or. Rev. Stat. § 163.175(1)(a) Does Not Criminalize Reckless Use of Force*

I now must compare the elements of subsection (1)(a) of Oregon's Assault II statute to the ACCA's elements clause. In his initial memorandum in support of his § 2255 motion, petitioner argues that he is entitled to resentencing because § 163.175(1)(a) criminalizes conduct

---

[3] There have been no substantive changes to Oregon's Assault II since its enactment in 1971.

7—OPINION AND ORDER

that involves the merely reckless use of force.[4] As explained above, the Ninth Circuit has held that a crime cannot qualify as a violent felony under the elements clause unless it requires the *intentional* or *knowing* use of force. *Dixon*, 805 F.3d at 1197. At first blush, petitioner's contention seems counterintuitive: subsection (1)(a) *expressly* uses the words "intentionally" and "knowingly," so it appears facially compliant with *Dixon*. Or. Rev. Stat. § 163.175(1)(a). But petitioner's argument finds some support in Oregon case law. *See United States v. Strickland*, 860 F.3d 1224, 1226 (9th Cir. 2017) (stating that courts assessing whether a state statute is a categorical match to a federal generic offense must consider both the text of the statute and the state courts' interpretation of that text). Specifically, the Oregon Supreme Court has held that, in order to support an Assault II conviction under subsection (1)(a), the government must "prove only that defendant was aware of the assaultive nature of his conduct and that his conduct in fact caused the victim serious physical injury." *State v. Barnes*, 986 P.2d 1160, 1167 (Or. 1999). The Ninth Circuit has addressed the meaning of the term "knowingly" in the Assault II statute as well: "[t]o be sure, to act knowingly in Oregon does not require knowledge that physical injury could possibly occur as a result of particular conduct, or conscious disregard of the risks associated with that conduct." *Crews*, 621 F.3d at 855.[5] Thus, subsection (1)(a) contains a bifurcated *mens rea* element: the use of assaultive force must be

---

[4] Petitioner also argues that § 163.175(1)(a) does not qualify as a violent felony because it does not necessarily involve the use of violent force. The Supreme Court held that physical force in the ACCA means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original). Petitioner concedes that his argument on this point is foreclosed by the Ninth Circuit's holding that "in the context of assault statutes, bodily injury entails the use of violent physical force[.]" *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1291 (9th Cir. 2017). He has raised the argument here in order to preserve it for appeal.

[5] As explained above, *Crews* held that Oregon's Assault II statute was a residual-clause violent felony. The *Crews* court did not consider whether Assault II qualified as a violent felony under the elements clause.

intentional or knowing, but there need not be an intent to cause physical injury or knowledge that physical injury will result.

In a footnote, the government suggests that *Voisine v. United States*, 136 S. Ct. 2272 (2016), means that reckless offenses may qualify as violent felonies under the ACCA. I recently encountered that argument in *United States v. Lewis*, 284 F. Supp. 3d 1152 (D. Or. 2018). I held then, as I hold today, that *Voisine* does not necessarily extend the ACCA's definition of "violent felony" to reckless offenses because, among other things, *Voisine* was not an ACCA case. *Lewis*, 284 F. Supp. 3d at 1159. As stated above, the Ninth Circuit requires ACCA predicate offenses to require intentional or knowing use of force. *Dixon*, 805 F.3d at 1197. Although there is arguably tension between Ninth Circuit precedent and *Voisine*, the Ninth Circuit's precedent is not clearly irreconcilable with *Voisine* and thus is still binding on this Court. *Id.* at 1159–60; *see also Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that prior circuit court cases may be "effectively overruled" if intervening higher authority has "undercut the theory of reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

The most on-point authority with respect to subsection (1)(a)'s bifurcated *mens rea* is *Lawrence,* in which the Ninth Circuit found that Washington's Assault II statute qualified as a predicate offense under the ACCA. *Lawrence*, 627 F.3d at 1284. The portion of the Washington statute at issue in *Lawrence* reads: "(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm[.]" Wash. Rev. Code. § 9A.36.021(1)(a). Both the Oregon and Washington assault statutes thus require purposeful or

knowing *conduct* that is the cause of significant injury to another person, but neither statute requires there be *actual knowledge* that injury will result from that conduct.

Analyzing Washington's assault statute, the Ninth Circuit concluded that "so long as the assault was intentional and substantial bodily injury was likely, no intent to commit the resulting harm is required[.]" *Lawrence*, 627 F.3d at 1288. The court held "that this requirement of intentional criminal assault, coupled with a requirement of substantial bodily harm" satisfies the elements clause. *Id.* at 1286. *Lawrence* is no longer considered good law because it was decided before *Descamps*, 570 U.S. at 267, and *Mathis*, 136 S. Ct. at 2251, which clarified the different processes required for divisible and indivisible statutes. In *Lawrence*, the Ninth Circuit treated an indivisible statute as divisible; specifically, it impermissibly applied the categorical approach to a subsection of a statute that, post-*Descamps* and *Mathis*, did not define a functionally separate crime. *United States v. Robinson*, 869 F.3d 933, 936-937 (9th Cir. 2017); *United States v. Slade*, 873 F.3d 712, 715 n.4 (9th Cir. 2017). Although *Lawrence* was overruled with respect to the categorization of Washington Assault II, no Ninth Circuit case since *Lawrence* has addressed how to deal with a bifurcated *mens rea* so similar to the one at issue here. Due to the similarity of the two statutes, I find *Lawrence* to be the best indication of how the Ninth Circuit would resolve petitioner's motion.

Petitioner argues that intervening authority has undermined *Lawrence*'s reasoning on the question of bifurcated *mens rea*. Specifically, petitioner cites *Elonis v. United States*, 135 S. Ct. 2001 (2015), for the proposition that a statute contains a negligent *mens rea* if it requires knowledge of the nature of the conduct but not knowledge of the consequences of that conduct. In *Elonis*, the defendant cultivated an online rap persona through which he posted lyrics with "graphically violent language and imagery[,]" that "included crude, degrading, and violent

material about his soon-to-be ex-wife." *Elonis*, 135 S. Ct. at 2005. At one point, the defendant wrote a post that seemingly referred to a plan to perpetrate school shootings in nearby elementary schools. *Id.* at 2006. He was charged with violating 18 U.S.C. § 875(c), which prohibits "transmi[ssion] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another[.]" *Id.* at 2007. That statute does not expressly denote any mental state. *Id.* at 2008. The Court stated that, "when interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Id.* at 2010 (internal quotation marks omitted). Noting that the "conviction . . . was premised solely on how [the defendant's] posts would be understood by a reasonable person," the court concluded "[t]hat [standard] is a negligence standard." *Id.* at 2011.

Although petitioner's argument has some force, it is ultimately insufficient to overcome *Lawrence* due to critical differences between that case and *Elonis*. *Lawrence* dealt with a criminal assault statute and *Elonis* considered a communication-based threat statute. Moreover, the Court in *Elonis* did not analyze *mens rea* in the context of the ACCA. Those differences suggest that *Lawrence* remains the best indicator of what Ninth Circuit law requires in this case.

In addition, a least one post-*Elonis* decision provides some evidence that the Ninth Circuit would continue to adhere to *Lawrence*'s analysis of bifurcated *mens rea*. In that case, the Ninth Circuit had to decide whether Washington's felony harassment statute was a crime of violence under the elements clause of the U.S. Sentencing Guidelines. *Werle*, 877 F.3d at 879. That clause is textually identical to the ACCA's elements clause. The Washington statute in *Werle* required (1) an intentional or knowing threat to kill someone that (2) placed the victim "in reasonable fear that the threat . . . would be carried out." *Werle*, 877 F.3d at 883. The

Washington Supreme Court had interpreted the statute as requiring only a negligent state of mind as to inducing that fear in the victim. *Id.* (citing *State v. Kilburn*, 84 P.3d 1215, 1221 (Wash. 2004)). The defendant in *Werle* argued that the Washington statute therefore permitted conviction for a merely negligent threat to use force. The Ninth Circuit rejected that argument because the elements clause of the Sentencing Guidelines "only requires that the state crime has as '*an element* . . . the threatened use of physical force.'" *Id.* (quoting U.S. Sentencing Guidelines Manual § 4B1.2(a)(1)) (emphasis in *Werle*).

*Werle* is not a perfect match for this case. Most notably, in *Werle*, there was a connection between the intent/knowledge *mens rea* and volitional threats of violence, whereas here, the Oregon statute requires only intentional assaultive conduct, with the violence tied solely to the consequences of that conduct (*i.e.*, "serious physical injury"). But there are also salient similarities between this case and *Werle*. Like the Washington statute at issue in *Werle*, § 163.175(1)(a) requires intent or knowledge with respect to a volitional act but only negligence with respect to the consequences of that act. Moreover, the elements clauses of the ACCA and the Guidelines are textually identical, so the Ninth Circuit's holding that intent or knowledge with respect to the volitional act (here, the use of physical force) in *Werle* applies in the ACCA context as well. Overall, I find *Werle* to be evidence that the Ninth Circuit would adhere to its reasoning in *Lawrence* on the question of bifurcated *mens rea*.

Finally, I note that no case law in Oregon affirms a conviction for Assault II where the defendant intended mere simple assault but caused substantial bodily harm. *Cf. United States v. Dunlap*, 162 F. Supp. 3d 1106, 1119 (D. Or. 2016) (making the same observation about Oregon case law on Assault III). As the Ninth Circuit recently emphasized, "[s]tate cases that examine the outer contours of the conduct criminalized by the state statute are particularly important

because 'we must presume that the conviction rested upon nothing more than the least of the acts criminalized.'" *Strickland*, 860 F.3d at 1226–27 (quoting *Moncrieffe*, 569 U.S. at 190-91) (alterations normalized). Moreover, the question is not whether the reviewing court can dream up a hypothetical set of facts that would fall outside the umbrella of the federal definition because the categorical approach "is not an invitation to apply legal imagination to the state offense[.]" *Moncrieffe*, 569 U.S. at 191 (internal quotation marks omitted); *see also Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010) (holding that the correct inquiry under the categorical approach is whether there is a "realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside" the federal definition). Petitioner points to no examples in Oregon where a defendant was convicted of Assault II for negligently or recklessly causing serious physical injury. In the absence of such case law and in light of *Lawrence* and *Werle*, I am bound to conclude that Oregon's Assault II statute penalizes only use of force that the Ninth Circuit would deem knowing or intentional.

III. *Until 2011, Assault II in Oregon Was Overbroad with Respect to Accomplice Liability*

In a supplemental memorandum in support of his motion, petitioner argues that § 163.175(1)(a) does not qualify as a violent felony because, until 2011, Oregon permitted accomplice-liability convictions for negligent acts. In support of that argument, petitioner cites *Valdivia-Flores*. That case required the court to determine whether Washington's statute on a possession of a controlled substance with intent to deliver was categorically an "aggravated felony" under the Immigration and Nationality Act ("INA"). *Valdivia-Flores*, 876 F.3d at 1206. The answer to that question hinged on a comparison between aiding and abetting liability under Washington and federal law. The court began by noting that aiding and abetting is "implicit . . . in every criminal charge." *Id.* at 1207. Under the Washington law in effect at the time of the

defendant's conviction, accomplice liability encompassed an act done "with knowledge that it will promote or facilitate the commission of a crime[.]" *Id.* (quoting Wash. Rev. Code § 9A.08.020(3)(a)(i)–(ii) (alterations normalized)). By contrast, federal law on accomplice liability requires *intent* to facilitate the commission of a crime by someone else. *Id.* (citing *United States v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005)). The court held that the knowledge/intent mismatch meant that the Washington statute was not an aggravated felony under the INA. *Id.*

The government contends that *Valdivia-Flores* is inapplicable here for two reasons. First, the government notes that the categorical analysis under the INA, unlike the analysis under the ACCA, requires comparing the state offense to a "corresponding aggravated felony" under federal law. *Valdivia-Flores*, 876 F.3d at 1206. The government is correct that the scope of federal accomplice liability is irrelevant to the ACCA inquiry. In *Valdivia-Flores*, the question was whether there was a categorical match between a federal crime (in its principal-liability and accomplice-liability variations) and a state crime (also in its principal- and accomplice-liability variations). Thus, the court had to compare the *mens rea* required for aiding and abetting liability under Washington law to that required under federal law. Here, by contrast, the question is whether the state crime falls within the umbrella of a federal definition; it does not matter at all that federal accomplice liability requires specific intent.

Notwithstanding those differences, *Valdivia-Flores* has implications in the ACCA context. In order to determine whether § 163.175(1)(a) is categorically a violent felony, I must determine the full scope of acts criminalized by that law. *Valdivia-Flores* makes clear that I must consider both principal *and* aiding/abetting liability in mapping the outer reaches of conduct that constitutes Assault II under Oregon law. *See Valdivia-Flores*, 876 F.3d at 1207

(noting that aiding and abetting is an "implicit" part of every criminal charge). I then must compare the full scope of conduct criminalized by § 163.175(1)(a) to the ACCA's definition of "violent felony." If the Oregon statute permits conviction—as either a principal or an accomplice—for merely reckless or negligent use of force, then there is no categorical match.

In the alternative, the government asserts that the Ninth Circuit has implicitly limited *Valdivia-Flores* to cases assessing whether state offenses categorically qualify as aggravated felonies under the INA. The government begins that line of argument by noting that the ACCA's violent felony definition is "virtually identical" to the definition of "crime of violence" under 18 U.S.C. § 16 and § 4B1.2(a)(1) of the U.S. Sentencing Guidelines. *United States v. Studhorse*, 883 F.3d 1198, 1206 (9th Cir. 2018). The government then notes that the Ninth Circuit has applied the categorical approach to Washington statutes post-*Valdivia-Flores* without any discussion of accomplice liability. For example, in *Studhorse*, the court held—without mentioning accomplice liability—that attempted murder under Washington law was categorically a crime of violence under 18 U.S.C. § 16. *Id.* Similarly, in *Werle*, the court held—again with no reference to accomplice liability—that felony harassment under Washington law is categorically a crime of violence under the Sentencing Guidelines. 877 F.3d at 882–84. The government argues that *Studhorse* and *Werle* implicitly held that the scope of accomplice liability has no bearing on the categorical analysis in Guidelines or § 16 cases—and, by extension, does not alter the categorical analysis in ACCA cases.

*Studhorse* and *Werle* do not bear the weight the government seeks to place on them.[6] Neither case cites *Valdivia-Flores* or addresses how accomplice liability might affect the

---

[6] The government's reliance on *Werle* is particularly misplaced, as *Werle* was decided a mere six days after *Valdivia-Flores*.

15—OPINION AND ORDER

categorical analysis. That is unsurprising, as it appears neither party raised the issue of accomplice liability in those cases. Courts generally consider and rule upon only those arguments presented to them. The government provides no reason to believe that the Ninth Circuit departed from that rule to *sub silentio* reject the argument petitioner advances here.[7]

The question, then, is what *mens rea* was required for accomplice liability at the time of petitioner's Assault II convictions? As it turns out, that is an unusually complex question. In 1994, one of Oregon's uniform jury instruction on accomplice liability provided that "[a] person who aids and abets another in committing a crime . . . is also criminally responsible for any act or other crime that [was] committed as a natural and probable consequences of the planning, preparation, or commission of the intended crime." *State v. Lopez-Minjarez*, 260 P.3d 439, 442 (Or. 2011). That instruction clearly permits accomplice liability for any crime—including for Assault II—to rest on merely negligent conduct. But Oregon's accomplice-liability *statute*, which has not been changed since 1994, expressly states that liability lies only for acts done "[w]ith the *intent* to promote or facilitate the commission of the crime[.]" Or. Rev. Stat. § 161.155 (emphasis added).

In 2011, the Oregon Supreme Court held that Oregon's accomplice-liability statute "requires a specific intent" and invalidated the jury instruction quoted above as an incorrect statement of the law. *Lopez-Minjarez*, 260 P.3d at 443. The court characterized the "analysis of why the instruction is wrong" as "straightforward." *Id.* at 442. Under these circumstances, what

---

[7] The government also cites *United States v. Binford*, 716 F. App'x 742, 743 (9th Cir. 2018), an unpublished memorandum decision in which the panel rejected the argument that "*Valdivia-Flores* . . . stands for the proposition that no Washington state conviction can serve as an aggravated felony at all." Unpublished dispositions of the Ninth Circuit are not precedential except under limited circumstances not presented here. 9th Cir. R. 36-3. For the reasons explained above, I am not persuaded by the *Binford* panel's suggestion that the *Werle* panel silently concluded that accomplice liability was irrelevant to its analysis.

16—OPINION AND ORDER

determines the scope of the acts *actually criminalized* by the Oregon law in 1994: the plain text of the statute or a jury instruction, in use for decades, which clearly conflicts with that statute?

To answer that difficult question, I return to the Ninth Circuit's instruction that the inquiry is whether there is a "realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside" the federal definition. *Nunez*, 594 F.3d at 1129. The government asserts that there is no realistic probability of such broad application, noting that petitioner has cited no cases affirming convictions for accomplice liability on the "natural and probable consequences" theory set out in the invalidated jury instruction. It is true that pre-2011 Oregon cases on aiding and abetting generally suggest that the inquiry is whether the defendant *intended* to facilitate the commission of a crime. *See, e.g., State v. Fitzgerald*, 513 P.2d 817, 820 (Or. Ct. App. 1973); *State v. Fichter*, 360 P.2d 278, 281 (Or. 1961). But, under the circumstances presented here, I do not think an on-point case directly affirming a natural-and-probable-consequences conviction is necessary. Assault II is a common charge, and the "natural and probable consequences" jury instruction was included in Oregon's model jury instructions for decades. Case law demonstrates that the "natural and probable consequences" instruction was used to secure convictions for Assault II. *See Lizarraga-Regalado v. Premo*, 390 P.3d 1079, 1987 (Or. Ct. App. 2017) (holding, in a post-conviction proceeding, that genuine issues of material fact precluded summary judgment regarding whether trial counsel was ineffective for failing to object to the nature-and-probable-consequences instruction in connection with an Assault II charge); *State v. Chapman*, 149 P.3d 284, 289 (Or. Ct. App. 2006) (rejecting the defendant's challenge to the natural-and-probable-consequences instruction on his Assault II charges because the defendant had not objected to the instruction at trial and did not meet the requirements for plain error review). Although the *text* of Oregon's accomplice liability

17—OPINION AND ORDER

statute is a categorical match to the *mens rea* required for an ACCA violent felony, the *law as actually applied* at the time of petitioner's 1994 convictions swept much more broadly. With respect to petitioner's 1994 convictions, therefore, Assault II was overbroad and thus not categorically a violent felony.[8]

## CONCLUSION

At the time of petitioner's 1994 convictions, Oregon law as actually practiced permitted a conviction for Assault II based on a "natural and probable consequences" theory of accomplice liability. Petitioner's Assault II convictions therefore do not qualify as violent felonies under the ACCA. Petitioner's motion (doc. 29) is GRANTED. The judgment in this case (doc. 25) is VACATED. I will direct my Courtroom Deputy to set a date for resentencing, at which time petitioner may submit objections to his Presentence Report pursuant to Federal Rule of Criminal Procedure 32(i)(1)(D) and both sides may argue for an appropriate and lawful sentence.

IT IS SO ORDERED.

Dated this 25th day of June 2018.

Ann Aiken
United States District Judge

---

[8] Because the government does not argue that I should resort to the modified categorical approach to determine whether petitioner pleaded guilty as an accomplice or a principal, I express no opinion on whether Oregon law is divisible with respect to principal versus accomplice liability. *Cf., e.g., United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) (holding, with respect to federal law, that "[a]iding and abetting is simply one means of committing a single crime"); *Ayers v. State*, 844 A.2d 304, 309 (Del. 2004) (setting out circumstances under which a special unanimity instruction is required as to accomplice liability); *State v. Hoffman*, 804 P.2d 577, 605 (Wash. 1991) ("[I]t is not necessary that jurors be unanimous as to the manner of an accomplice's and a principal's participation as long as all agree that they did participate in the crime.").

18—OPINION AND ORDER